Nos. 25-2461, 25-2487 (consol.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, | ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern |
| Plaintiff-Appellant, | ) ) | Division |
| and | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Intervening Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 1:25-cv-00669 |
| STATE OF ILLINOIS; JAMES BENNETT, in his official capacity as Director of the Illinois Department of Human Rights; KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; ALEXI GIANNOULIAS, in his official capacity as Secretary of State of the State of Illinois; and JB PRITZKER, in his official capacity as Governor of the State of Illinois, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | The Honorable |
| | ) | SHARON JOHNSON COLEMAN, |
| Defendants-Appellees. | ) | Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES**

**SARAH A. HUNGER**
Deputy Solicitor General
**AKANKSHA SHAH**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3312

**TABLE OF CONTENTS**

                                                                    **Page**

TABLE OF AUTHORITIES .......................................................................... ii

JURISDICTIONAL STATEMENT ............................................................ 1

ISSUES PRESENTED FOR REVIEW ...................................................... 6

STATEMENT OF THE CASE .................................................................... 7

    A.    Illinois enacts SB 2930 .............................................................. 8
    B.    AAER files suit, and the United States intervenes ............................ 10
    C.    Plaintiffs file motions seeking preliminary injunctive relief ................ 13
    D.    The district court denies plaintiffs' preliminary injunction motions ... 15

SUMMARY OF ARGUMENT ..................................................................... 18

ARGUMENT ................................................................................................ 19

I.    Plaintiffs Must Show That They Are Entitled To A Preliminary Injunction, Which Is Granted Only In Exceptional Circumstances ............... 19

II.    Plaintiffs Have Not Shown A Likelihood Of Success On The Merits Of Their Claims ............................................................................... 20

    A.    AAER has not shown that it has associational standing ..................... 20

        1.    AAER has failed to identify a member with standing to challenge SB 2930 ................................................................... 22

        2.    AAER has failed to establish an injury-in-fact ......................... 29

    B.    AAER is unlikely to succeed on the merits of its First Amendment claim ............................................................................................ 35

    C.    Plaintiffs are not likely to succeed on the merits of their Equal Protection Clause claims ........................................................... 43

III.    Plaintiffs Have Not Satisfied The Remaining Preliminary Injunction Factors. ................................................................................ 47

IV.    Exercising Pendent Appellate Jurisdiction Over The Partial Dismissal Order Is Unwarranted ..................................................... 49

CONCLUSION ............................................................................................. 50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

**TABLE OF AUTHORITIES**

**CASES**

*Abelesz v. OTOP Bank,*
    692 F.3d 638 (7th Cir. 2012) ........................................................................... 4

*Access Living of Metro. Chi. v. Uber Techs., Inc.,*
    958 F.3d 604 (7th Cir. 2020) ..........................................................................35

*All. for Fair Bd. Recruitment v. Sec. & Exch. Comm'n,*
    125 F.4th 159 (5th Cir. 2024) .........................................................................42

*Alston v. City of Madison,*
    853 F.3d 901 (7th Cir. 2017) .....................................................................43, 44

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC,*
    103 F.4th 765 (11th Cir. 2024) .......................................................................24

*Am. Target Advert., Inc. v. Giani,*
    199 F.3d 1241 (10th Cir. 2000) ......................................................................41

*Anderson v. Martin,*
    375 U.S. 399 (1964) .................................................................................45, 46

*Anderson v. U.S.F. Logistics (IMC), Inc.,*
    274 F.3d 470 (7th Cir. 2001) ........................................................................... 4

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California
    Dep't of Transp.,* 713 F.3d 1187 (9th Cir. 2013) ..............................................23

*Authenticom, Inc. v. CDK Global, LLC,*
    874 F.3d 1019 (7th Cir. 2017) .........................................................................48

*Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502,*
    888 F.3d 266 (7th Cir. 2018) ........................................................................... 3

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ...........................................................................................36

*Bush v. Vera,*
    517 U.S. 952 (1996) ........................................................................................42

*Ctr. for Individual Freedom v. Madigan,*
    697 F.3d 464 (7th Cir. 2012) ...........................................................................37

*Citizens United v. FEC*,
558 U.S. 310 (2010) ................................................................ 36

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018) ................................................. 40

*City of Richmond v. J.A. Croson Co.*,
488 U.S. 469 (1989) ......................................................... 43, 45

*Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*,
522 F.3d 796 (7th Cir. 2008) ................................................ 24

*Do No Harm v. Pfizer Inc.*,
646 F. Supp. 3d 490 (S.D.N.Y. 2022), *aff'd*, 96 F.4th 106 (2d Cir. 2024),
*opinion vacated and superseded on reh'g*, 126 F.4th 109 (2d Cir. 2025), and
*vacated and remanded on other grounds*, 126 F.4th 109 (2d Cir. 2025)......... 25

*Doe 3 v. Elmbrook Sch. Dist.*,
658 F.3d 710 (7th Cir. 2011), *adopted on this issue by Doe v. Elmbrook Sch.
Dist.*, 687 F.3d 840 (7th Cir. 2012) (*en banc*) .................................. 27

*Doe v. Trs. of Indiana Univ.*,
101 F.4th 485 (7th Cir. 2024), *cert. denied sub nom. Doe v. The Trs. of
Indiana Univ.*, 145 S. Ct. 546 (2024)..................................... 26-28

*Doe v. Vill. of Deerfield*,
819 F.3d 372 (7th Cir. 2016) .............................................. 26

*Draper v. Healey*,
827 F.3d 1 (1st Cir. 2016) .................................................. 23

*Emergency Servs. Billing Corp. v. Allstate Ins. Co.*,
668 F.3d 459 (7th Cir. 2012) ............................................... 3

*Ent. Software Ass'n v. Blagojevich*,
469 F.3d 641 (7th Cir. 2006) ............................................... 38

*FDA v. All. For Hippocratic Med.*,
602 U.S. 367 (2024) ..................................................... 31, 32

*FEC v. Wis. Right to Life, Inc.*,
551 U.S. 449 (2007) ....................................................... 36

*Fox v. Dakkota Integrated Sys., LLC*,
980 F.3d 1146 (7th Cir. 2020) ............................................. 29

*Gaspee Project v. Mederos,*
13 F.4th 79 (1st Cir. 2021) ....................................................................... 38

*GEFT Outdoors, LLC v. City of Westfield,*
922 F.3d 357 (7th Cir. 2019) .................................................................... 20

*Georgia Republican Party v. Sec. & Exch. Comm'n,*
888 F.3d 1198 (11th Cir. 2018) ............................................................... 23

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ................................................................................. 21

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.,*
97 F.4th 525 (7th Cir. 2024) ...............................................................29-30

*John Doe No. 1 v. Reed,*
561 U.S. 186 (2010) ................................................................................. 37

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,*
585 U.S. 878 (2018) .............................................................................42-43

*League of United Latin Am. Citizens v. Perry,*
548 U.S. 399 (2006) ................................................................................. 42

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990) ................................................................................. 21

*Maryland Shall Issue, Inc. v. Anne Arundel Cnty. Maryland,*
91 F.4th 238 (4th Cir.), *cert. denied,* 145 S. Ct. 152 (2024) ....................... 19, 38

*Mazurek v. Armstrong,*
520 U.S. 968 (1997) ................................................................................. 19

*MD/DC/DE Broadcasters Association v. FCC,*
236 F.3d 13 (D.C. Cir. 2001) .................................................................... 46

*Meriwether v. Hartop,*
992 F.3d 492 (6th Cir. 2021) .................................................................... 42

*Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs of City of Milwaukee,*
708 F.3d 921 (7th Cir. 2013) .................................................................... 34

*National Coalition of Prayer, Inc. v. Carter,*
455 F.3d 783 (7th Cir. 2006) .................................................................... 39

*NIFLA v. Becerra*,
585 U.S. 755 (2018) ............................................................41, 42

*Norwood v. Harrison*,
413 U.S. 455 (1973) ...........................................................44, 45

*Obergefell v. Hodges*,
576 U.S. 644 (2015) ..................................................................42

*Pilsen Neighbors Cmty. Council v. Netsch*,
960 F.2d 676 (7th Cir. 1992) ...............................................37, 40

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
2 F.4th 1002 (7th Cir. 2021) ........................................20-22, 24

*Remijas v. Neiman Marcus Grp. LLC*,
794 F.3d 688 (7th Cir. 2015) ..................................................35

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
487 U.S. 781 (1988) ......................................................36, 39, 40

*Rio Grande Found. v. Oliver*,
154 F. 4th 1213 (10th Cir. 2025) ..............................................38

*Satanic Temple, Inc. v. Rokita*,
163 F.4th 1061 (7th Cir. 2026) ...........................................24-26

*Speech First, Inc. v. Killeen*,
968 F.3d 628 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020) ................................................................21

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016) ..................................................................29

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) .............................................................22, 23

*Students for Fair Admissions, Inc. v. Harvard*,
600 U.S. 181 (2023) ..................................................................42

*Tennessee Republican Party v. Sec. & Exch. Comm'n*,
863 F.3d 507 (6th Cir. 2017) ....................................................23

*TransUnion v. Ramirez*,
594 U.S. 413 (2021) ..................................................................34

*U.S. ex rel. Valders Stone & Marble, Inc. v. C-Way Const. Co.*,
909 F.2d 259 (7th Cir. 1990) ................................................................ 4

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ............................................................................ 43

*Vill. of Schaumburg v. Citizens for a Better Env't*,
444 U.S. 620 (1980) ....................................................................... 39, 40

*West v. Louisville Gas & Elec. Co.*,
920 F.3d 499 (7th Cir. 2019) ................................................................ 2

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*,
471 U.S. 626 (1985) ..................................................................... 36, 39-41

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

225 ILCS 460/1 *et seq.* ................................................................... 8, 9

760 ILCS 55/1 *et seq.* .................................................................. 8, 10

805 ILCS 105/114.15 ................................... 8, 9, 32, 33, 37, 38, 44

28 U.S.C. § 1292(a)(1) ..................................................................... 2

28 U.S.C. § 2107(a) .......................................................................... 2

Fed. R. App. P. 4(a)(1)(A) ................................................................ 2

Fed. R. Civ. P. 12 ................................................... 3, 12, 16, 48

Fed. R. Civ. P. 54(b) ......................................................................... 3

U.S. Const. amend. XIV ................................................................ 43

## OTHER AUTHORITIES

Illinois Department of Human Rights, *Posting Standards for Charitable
Corporations re. Public Act 103-0635* (2025) ..................................... 9

Ill. Sen. Trans. 2024 Reg. Sess. No. 96 (Apr. 10, 2024)
(remarks of Senator Johnson) ....................................................... 33

U.S. Census Bureau, Measuring Race and Ethnicity Across the Decades:
1790-2010 (Nov. 2, 2015) .................................................................. 41

**JURISDICTIONAL STATEMENT**

The jurisdictional statements of Plaintiff-Appellant American Alliance for Equal Rights ("AAER") and Intervening Plaintiff-Appellant United States of America (collectively, "plaintiffs") are not complete and correct. Defendants-Appellees State of Illinois, James Bennett, Kwame Raoul, Alexi Giannoulias, and JB Pritzker provide this jurisdictional statement under Circuit Rule 28(b).

On January 21, 2025, AAER filed an action in the district court against Raoul, Bennett, and Giannoulias, alleging that an Illinois law ("SB 2930") violates the First and Fourteenth Amendments to the United States Constitution. Doc. 1.[1] On March 11, 2025, the district court granted the United States' motion to intervene. A22. On March 13, 2025, the United States filed its complaint against defendants, alleging that SB 2930 violates the Fourteenth Amendment to the United States Constitution. Doc. 28.

On April 22, 2025, AAER filed its operative, amended complaint against Raoul, Bennett, and Giannoulias, alleging that SB 2930 violates the First and Fourteenth Amendments to the United States Constitution. A23. On May 6, 2025, the United States filed its operative, amended complaint against defendants, alleging that SB 2930 violates the Fourteenth Amendment. A46. The district court lacked subject-matter jurisdiction over AAER's operative complaint because AAER did not demonstrate Article III standing. *See* Docs. 69, 86; *infra* Section II.A. Had

---

[1] The district court docket is cited as "Doc. __," the Joint Appellants' Appendix is cited as "A__," and appellants' opening briefs are cited as "AAER Br. __" and "U.S. Br. __."

AAER demonstrated standing, however, the district court would have had subject-matter jurisdiction over its operative complaint under 28 U.S.C. § 1331 because the complaint raised a federal question.

On August 20, 2025, the district court entered an order that: (1) partially dismissed AAER's amended complaint for lack of Article III standing; (2) dismissed the United States' amended complaint for lack of Article III standing; (3) denied AAER's motion for preliminary injunction; and (4) denied the United States' motion for preliminary injunction as moot. A2. On August 21, 2025, AAER filed a notice of appeal from the court's August 20 order, citing the portion of the order denying its motion for a preliminary injunction. Doc. 101. On August 25, 2025, the United States filed a notice of appeal from the August 20 order, citing the grant of defendants' motion to dismiss the United States' amended complaint and the denial of its motion for preliminary injunction as moot. Doc. 104. The notices were timely because they were filed within 30 days of the district court's order. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

This court has appellate jurisdiction over the district court's denial of the preliminary injunction motions under 28 U.S.C. § 1292(a)(1). But this court lacks jurisdiction over the remaining portions of the district court's order because some of AAER's claims remain pending, meaning that no final judgment disposing of all claims against all parties has been entered. *See West v. Louisville Gas & Elec. Co.*, 920 F.3d 499, 503-04 (7th Cir. 2019).

2

Plaintiffs, however, ask this court to exercise jurisdiction over the portion of the district court's order dismissing their claims under Fed. R. Civ. P. 12(b)(1). AAER Br. 3; U.S. Br. 3. The court should decline this request. As for the United States, it did not ask the district court to enter final judgment as to its claims and to "expressly determine[ ] that there is no just reason for delay" under Fed. R. Civ. P. 54(b). *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 463 (7th Cir. 2012) (Rule 54(b) finding allowed for appeal of dismissal of certain claims before final judgment's entry). Instead, the United States argues that this court has jurisdiction over the portion of the order dismissing its complaint for lack of Article III standing because "[i]nterlocutory review of the denial of injunctive relief . . . brings up with it for review the dismissal on which the validity of the denial of the injunction turns." U.S. Br. 3 (cleaned up). And here, the United States asserts, the "district court denied the request for injunctive relief as 'moot' based solely on its concurrent decision to dismiss the United States' Complaint for lack of standing." *Id.*; *see also id.* (arguing that the dismissal and the preliminary injunction denial are "inextricably intertwined").

The United States is incorrect: there are several independent bases upon which this court could affirm the denial of the United States' preliminary injunction motion, and thus it is unnecessary for this court to extend its appellate jurisdiction to review the dismissal of the United States' complaint. *See Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, 888 F.3d 266, 271 (7th Cir. 2018) (pendent appellate jurisdiction "must be strictly limited" to avoid "extinguish[ing] the final-judgment

3

requirement of 28 U.S.C. § 1291" or "undermining the discretion that [28 U.S.C.] § 1292(b) gives to district judges and appellate judges"); *see also Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 477-78 (7th Cir. 2001) (appellate court may affirm the denial of a preliminary injunction "on any ground that has a basis in the record"). For example, as detailed below, *infra* Section II.C, the United States is not likely to succeed on the merits of its claim that SB 2930 violates the Equal Protection Clause, nor can it show that an injunction would serve the public interest or that the balance of equities tips in its favor. Accordingly, this court need not reach the question of whether the United States lacked standing because it could affirm the denial of preliminary injunctive relief — the only portion of the district court's order before this court as a matter of right — on alternative grounds. *E.g.*, *Abelesz v. OTOP Bank*, 692 F.3d 638, 647 (7th Cir. 2012) (declining to exercise "narrow doctrine" of pendent appellate jurisdiction where parties failed to identify "compelling reasons" to invoke it); *U.S. ex rel. Valders Stone & Marble, Inc. v. C-Way Const. Co.*, 909 F.2d 259, 262 (7th Cir. 1990) ("it must be practically indispensable that we address the merits of the unappealable order in order to resolve the properly-taken appeal").

AAER makes a similar argument for the first time in its opening brief: specifically, that this court "has pendent appellate jurisdiction to review the partial dismissal of [its] complaint because the district court denied [its] preliminary injunction for the same reason it partially dismissed." AAER Br. 3. AAER did not include this as a basis for its appeal in either its notice of appeal or its docketing

4

statement before this court.  Doc. 101; 7th Cir. Doc. 4.  In any event, as with the United States, this court need not reach the question of whether AAER sufficiently demonstrated an injury-in-fact by presenting non-speculative evidence that SB 2930 would require it to disclose any information, which was the basis of the district court's dismissal order with respect to AAER, A15, to affirm the denial of preliminary injunctive relief.  Indeed, there are several alternative grounds for affirmance, including that AAER did not properly identify a member with standing, is not likely to succeed on the merits, and cannot it show that an injunction would serve the public interest or that the balance of equities tips in its favor.  *See infra* Sections II.A, II.C, III.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court acted within its discretion in denying AAER's preliminary injunction motion, where AAER failed to demonstrate associational standing, where it was not likely to succeed on the merits of its constitutional claims, and where the remaining factors weighed in favor of defendants.

2.      Whether the district court acted within its discretion in denying the United States' preliminary injunction motion, where it was not likely to succeed on the merits of its Equal Protection Clause claim, and where the remaining factors weighed in favor of defendants.

3.      Whether this court should exercise pendent appellate jurisdiction to review the portion of the district court's order dismissing claims for lack of standing, where such review is unnecessary to affirm the denial of plaintiffs' preliminary injunction motions.

**STATEMENT OF THE CASE**

In 2024, the Illinois legislature enacted SB 2930, a law requiring certain charitable organizations to collect demographic information from their directors and officers. Director and officer participation is voluntary; SB 2930 provides an express opt-out provision that any officer or director may use. If information is collected from an organization's directors and officers, then the organization must aggregate that information and post it on its website. After SB 2930 was enacted, AAER, which does not need to comply with the law, filed suit on behalf of its member organizations, which do. Shortly thereafter, the United States intervened.

The two organizations upon which AAER relies for associational standing, however, have not named themselves in AAER's complaint or preliminary injunction filings because they do not, according to AAER, want to be "publicly connect[ed] . . . to their unpopular viewpoints." A37. As relevant for purposes of this interlocutory appeal, defendants opposed plaintiffs' preliminary injunction motions on several grounds, including that AAER could not proceed with associational standing without either naming its members or seeking permission from the district court for the members to proceed pseudonymously, that the member organizations had not sufficiently demonstrated injury-in-fact, and that neither plaintiff was likely to succeed on the merits of its claims. The district court ultimately entered an omnibus order in which it denied preliminary injunctive relief, and that portion of the order is now before this court on appeal.

**A.** **Illinois enacts SB 2930.**

Nonprofit organizations that choose to operate in Illinois must comply with standards governing asset management, solicitation tracking, and public transparency. *See, e.g.,* 760 ILCS 55/1 *et seq.*; 225 ILCS 460/1 *et seq.* These laws require nonprofits to collect and disclose information to the State. For example, nonprofits operating in Illinois must make "reports under oath, setting forth information as to the nature of the assets held for charitable purposes." 760 ILCS 55/7(a). Trustees of nonprofits who receive "property for charitable purposes" must separately file and register a copy of the trust agreement with the Attorney General. *Id.* § 55/6(a). And nonprofits receiving "contributions in excess of $300,000" must file a written report, including a financial statement, with details of "total receipts and income from each separate solicitation project or source." 225 ILCS 460/4. In the interest of public transparency and accountability, much of the disclosed information is also available to the public. Trust agreements are "open to public inspection," 760 ILCS 55/11, as are "registration statements, annual reports, financial statements, professional fund raisers' contracts, bonds, applications for registration and re-registration, and other documents required to be filed with the Attorney General," 225 ILCS 460/2(f).

In 2024, Illinois added to these requirements by enacting SB 2930, which directs any "corporation that reports grants of $1,000,000 or more to other charitable organizations" to collect "aggregated demographic information of the corporation's directors and officers." 805 ILCS 105/114.15. A charitable

organization is defined as "any benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such which solicits and collects funds for charitable purposes." 225 ILCS 460/1(a). The demographic information is collected in seven categories: "race, ethnicity, gender, disability status, veteran status, sexual orientation, and gender identity." 805 ILCS 105/114.15(a). However, any director or officer may "decline to disclose any or all personal demographic information to the corporation." *Id*. § 105/114.15(c). The law also requires that any collected demographic information must be aggregated and posted by the nonprofit "on its publicly available website, if one exists." *Id*. § 105/114.15(a). If no data was collected, then no disclosure is required. *Id.*

The Illinois Department of Human Rights ("Department") publishes a "standardized list of demographic classifications" for the purposes of reporting consistent aggregated demographic information. *Id*. § 105/114.15(b); Illinois Department of Human Rights, *Posting Standards for Charitable Corporations re. Public Act 103-0635* (2025), https://dhr.illinois.gov/legal/posting-standards-for-charitable-corporations-re-public-act-103.html. The classifications are limited to the categories identified in SB 2930. For certain categories, the individual is given a choice between two options, such as "veteran" or "not a veteran." *Id.* For others, the individual may choose among several different classifications — such as "Black

9

or African American" and "White or Caucasian" — or use a "write in" option. *Id.* The law requires that any disclosures be made on an annual basis. 760 ILCS 55/7.

**B.     AAER files suit, and the United States intervenes.**

In January 2025, shortly before SB 2930 went into effect, AAER filed a verified complaint in the district court against Raoul, Bennett, and Giannoulias, alleging that the law violates the First and Fourteenth Amendments to the United States Constitution. Doc. 1. In March 2025, the United States filed a complaint in intervention against defendants, raising only an Equal Protection Clause claim. Docs. 25, 28. After defendants filed motions to dismiss, Docs. 55-56, plaintiffs amended their complaints, A23-A56.

As with its initial complaint, AAER purported to bring its operative, amended complaint on behalf of its member organizations. A25. Relevant here, AAER alleged that its membership includes two organizations, Member A and Member B, that are "directly regulated" by SB 2930. *Id.* AAER did not identify Members A and B, alleging that it has an organizational interest in "protect[ing] the true identities of its members." A37. Without such protection, "members would be less likely to join [AAER], communicate freely with [it], or vindicate their rights in court and elsewhere." *Id.* AAER further alleged that Members A and B "are pseudonymous because they fear Illinois will retaliate against them" and because they do not wish to be "publicly connect[ed] . . . to their unpopular viewpoints." A36-A37. Indeed, Members A and B believe that, if they were identified, "other organizations will be unwilling to partner with them, potential employees will be

10

unwilling to work for them, and donations will decrease if their participation in this litigation becomes public." A36. Finally, AAER alleged that "[p]ublicly disclosing Member A and B's names would also reveal the identities of their leadership," and that "Defendants — or anyone else — could shame, threaten, or retaliate against these nonprofits' directors, officers, and staff." A37.

Turning to the claims, AAER first alleged that SB 2930 is discriminatory in violation of the Equal Protection Clause because "it encourages charitable organizations like Members A and B to discriminate based on race." A39. According to AAER, by "forcing charities to publicize the demographics of their senior leadership," groups will be subjected to "public shaming" if their "demographics are perceived as insufficient," which will cause "organizations like Members A and B" to discriminate based on race. *Id.* And "[b]ecause SB 2930 is unconstitutional with respect to race, the rest of the Act must fall." A40.

AAER next alleged that SB 2930 is unconstitutional under the First Amendment because it requires organizations to speak to their staff in order to collect demographic information and then post it on their websites. A41. AAER claimed this would be harmful because it "forces Members A and B to speak about a host of controversial demographic issues that they don't want to discuss, advertise, or endorse." *Id.* Accordingly, AAER alleged SB 2930 would violate the First Amendment under any level of scrutiny. A41-A42. The complaint sought a

declaratory judgment that the law violates the First and Fourteenth Amendments and a preliminary and permanent injunction against enforcement of the law. A43.

In its operative complaint, the United States brought only a Fourteenth Amendment claim, on the same basis as AAER. A46-A47. Indeed, the United States, like AAER, alleged that SB 2930 "violates the Equal Protection Clause by forcing charitable organizations to gather and post demographic information," A47, and believed that the law will "encourage[ ] nonprofits to discriminate based on race to select its directors and officers" in order "to avoid public shaming," A53-A54.

Defendants filed motions to dismiss both complaints under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Docs. 68-69, 85-86. With respect to AAER, defendants explained that the amended complaint should be dismissed under Rule 12(b)(1) because AAER had failed to identify a member that would have standing in its own right, as is required to satisfy associational standing requirements. Doc. 69 at 5. But even if it had, AAER had also insufficiently alleged an injury-in-fact because it had not alleged that SB 2930 would require it to disclose any information. *Id.* at 8, 12. Finally, given that SB 2930 had not gone into effect, defendants argued that the United States had not sufficiently alleged Article III standing because it failed to identify any injury-in-fact. Doc. 86 at 4-5. Defendants also moved to dismiss plaintiffs' Fourteenth Amendment claims under Rule 12(b)(6) because neither

complaint contained allegations that SB 2930 required decision-making based on race or was enacted with discriminatory intent.  Doc. 69 at 12-14; Doc. 86 at 5.

**C.    Plaintiffs file motions seeking preliminary injunctive relief.**

Additionally, AAER and the United States each filed a motion for a preliminary injunction that would enjoin defendants from enforcing SB 2930.  Docs. 44, 49.  AAER's motion argued that it was likely to succeed on the merits of its First and Fourteenth Amendment claims because SB 2930 encourages discrimination in violation of the Fourteenth Amendment and improperly compels speech in violation of the First Amendment.  Doc. 44 at 7-11.  AAER then argued Members A and B — which it again declined to identify — would be irreparably harmed by the alleged constitutional injuries, act of disclosure, and compliance costs.  *Id.* at 12-13.  The United States made similar arguments in its motion, which addressed the Fourteenth Amendment claim alone.  Doc. 50 at 7-8, 10.

In support of its motion, AAER offered declarations from three individuals: the anonymous CEO of Member A, the anonymous Chairman of Member B, and AAER President Edward Blum.  A57-A73 (corrected versions of declarations).  The United States did not submit any declarations or other evidence.  The declarations of Member A's CEO and Member B's Chairman were nearly identical.  Both Member A's CEO and Member B's Chairman stated that they feel pressure to discriminate as a result of having to comply with SB 2930 and that complying with SB 2930 would require them to engage in speech that they do not agree with, including by collecting information from their staff and posting the aggregate

13

demographic information on their websites.  A66, A71.  The declarations also asserted that the organizations would incur expenses from having to comply with SB 2930.  A66-A67; A71-A72.

In support of pseudonymity, both declarants claimed a fear of retaliation by the State, a belief that other organizations and potential employees would not want to partner or work with their organizations if they were identified, and the potential for decreased donations if the organizations' identities were to become public.  A67, A72.  Blum's declaration claimed that pseudonymity was necessary to protect Members A and B from the harassment that he has experienced as an individual who "has been a vocal advocate against racial and ethnic preferences."  A59-A60.  Blum also professed his personal belief that SB 2930 would "empower the public to pressure nonprofits to discriminate by considering or giving preferences to minorities based on the statute's demographic criteria."  A59.

In response, defendants filed a motion to strike the declarations and an opposition brief.  Docs. 71, 73.  As to the former, defendants objected to the declarations because they were signed using aliases and lacked language swearing or affirming that the contents were true and correct under penalty of perjury.  Doc. 71.  With respect to the latter, defendants opposed the preliminary injunction motions on many of the same grounds asserted in their motions to dismiss.  Doc. 73.  For instance, defendants again argued that AAER lacked standing because it had failed to name a member that would have standing on its own behalf and because it asserted no cognizable injury-in-fact.  *Id.* at 6-8.  This was especially so at the

preliminary injunction phase, which imposes a more substantial evidentiary burden on plaintiffs, including for purposes of associational standing, than at the motion to dismiss phase. *Id.*

Similarly, defendants argued, plaintiffs were unlikely to succeed on the merits of their Fourteenth Amendment claim for the same reasons it failed as a matter of law: SB 2930 is a race-neutral law that requires no decision-making based on race. *Id.* at 9. Nor was there any evidence that SB 2930 was enacted with a discriminatory purpose. *Id.* at 11. The First Amendment claim likewise failed because SB 2930 required only "factual, uncontroversial" commercial speech that was supported by a legitimate government interest. *Id.* at 12.

Finally, defendants argued that plaintiffs had failed to show any of the other factors favoring an injunction, including irreparable harm or that there was an appropriate injunction that could be entered based on the record evidence before the court. *Id.* at 16-20. Indeed, though AAER sought an injunction enjoining any enforcement of SB 2930, it had presented argument only on behalf of two of its members, both of which had elected to proceed by using pseudonyms. *Id.* By contrast, the public interest favored defendants, because the public has an interest in transparency. *Id.*

## D. The district court denies plaintiffs' preliminary injunction motions.

The district court issued an opinion granting in part the motion to dismiss AAER's complaint, dismissing the United States' complaint, and denying both preliminary injunction motions. A1-A22.

The district court first addressed arguments that the complaints should be dismissed under Rule 12(b)(1) because plaintiffs lacked standing.  A7.  The court rejected defendants' threshold arguments as to associational standing, noting that this court had yet to decide whether organizations must name members at the pleading stage and explaining its view that "the existing body of case law successfully challenging the propriety of proceeding pseudonymously" involved instances where a party, as opposed to members of an organization, sought to remain unnamed.  A9.

However, the court accepted defendants' arguments that AAER had failed to show an injury-in-fact as to SB 2930's requirements with respect to the disclosure of demographic information.  A15.  In fact, the court noted, the declarations supported this conclusion because they suggested "that Members A and B face no real prospect or substantial risk of disclosure, and thus no cognizable injury based on disclosure at all, because their officers and directors do not intend to disclose any demographic information about themselves."  A13.  Accordingly, the court dismissed the portion of AAER's First Amendment claim that challenged SB 2930's disclosure requirements, as well as AAER's Fourteenth Amendment claim, the entirety of which challenged the disclosure requirements.  A14.  The court also dismissed the Fourteenth Amendment claim raised by the United States.  A18-A19.

Finally, the court addressed the sole remaining issue presented by the preliminary injunction motions:  the portion of AAER's First Amendment claim that challenged SB 2930's requirements regarding collecting demographic information.

16

A20.  Because AAER had presented no "case law indicating that [it] has some likelihood of success on the merits for its First Amendment claim based on the *collection* of demographic information," it was not likely to succeed on the merits of that claim.  *Id.* (emphasis in original).  The court also concluded that AAER had not shown an irreparable harm.  A20.  Plaintiffs appealed.  Docs. 101, 104.

## SUMMARY OF ARGUMENT

The district court acted well within its discretion in denying plaintiffs' motions for preliminary injunctive relief, and this court should affirm for several, independent reasons.

At the threshold, AAER has not complied with the associational standing requirement that it identify a member of its organization that would have standing to sue on its own behalf by either naming that member or by seeking and obtaining permission from the district court for one of its members to proceed pseudonymously. And even if AAER had sought permission from the district court, Members A and B have not shown that their reasons for proceeding pseudonymously would meet this court's demanding standard for allowing vulnerable individuals to remain unnamed in extraordinary circumstances. On the contrary, Members A and B, which are organizations and not individuals, seek to avoid the financial and reputational repercussions of being "publicly connect[ed] to their unpopular viewpoints." A37.

But even if it had properly identified its members, AAER has not shown that those members have suffered an injury-in-fact. Instead, as the district court rightly concluded, the declarations provided by Members A and B suggest that they will not have to post any demographic information on their websites because their officers and directors are not inclined to voluntarily disclose their demographic information.

In addition to these threshold infirmities, plaintiffs are not likely to succeed on the merits of their claims. With respect to the First Amendment claim, SB 2930

18

is a constitutionally permissible disclosure regulation that is substantially related to a legitimate state interest, and AAER has not shown otherwise. As to the Equal Protection Clause claims, they are likely to fail because SB 2930 is a race-neutral law that was not enacted with a discriminatory purpose.

Furthermore, plaintiffs have not satisfied the remaining preliminary injunction factors. In particular, plaintiffs have not shown that they will suffer irreparable harm or that any such harm would outweigh the public interest in transparency and disclosure.

Finally, there is no need for this court to exercise pendent appellate jurisdiction over the partial dismissal order entered by the district court. There are multiple alternative bases for affirmance that do not require examining the underlying reasoning of that partial dismissal, which, in any event, was entered without prejudice and with leave to amend. But if this court were to exercise pendent appellate jurisdiction, it should affirm the partial dismissal as to AAER's claims because, for the same reasons outlined in the context of the preliminary injunction, AAER lacked standing to bring them.

## ARGUMENT

### I.      Plaintiffs Must Show That They Are Entitled To A Preliminary Injunction, Which Is Granted Only In Exceptional Circumstances.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the [plaintiff], *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (internal quotations omitted). The plaintiff "must establish that it has

19

some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotations omitted). If the plaintiff satisfies all three requirements, then the court must weigh the harm that the plaintiff will incur without an injunction against the harm to the defendant if one is entered, and "consider whether the injunction is in the public interest." *Id.* (internal quotations omitted). This analysis is done on a "sliding scale" — if the plaintiff is less likely to win on the merits, the balance of harms must weigh more heavily in its favor, and vice versa. *Id.* (internal quotations omitted).

When reviewing a district court's order denying a preliminary injunction motion, this court reviews legal conclusions *de novo*, findings of historical or evidentiary fact for clear error, and the balancing of the injunction factors for an abuse of discretion. *Id.*

## II. Plaintiffs Have Not Shown A Likelihood Of Success On The Merits Of Their Claims.

### A. AAER has not shown that it has associational standing.

To start, AAER is not likely to succeed on the merits of its claims because it has not shown that it has Article III standing. Here, AAER purports to rely on associational standing, which "allows an organization to sue on behalf of its members." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021). To satisfy this standard, "an association must show that: (1) at least one of its members would 'have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and

(3) 'neither the claim asserted nor the relief requested requires the participation of individual members.'" *Id.* (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). At issue in this appeal is the first factor, which an organization can satisfy by demonstrating that at least one of its members has "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1007.

Furthermore, "[e]stablishing standing is the plaintiff's burden and must be secured at each stage of the litigation." *Id.* (internal quotations omitted). Accordingly, "as the litigation progresses, the way in which the plaintiff demonstrates standing changes." *Id.* (cleaned up). Specifically, "each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (cleaned up). Relevant here, a plaintiff's "burden to demonstrate standing in the context of a preliminary injunction motion is 'at least as great as the burden of resisting a summary judgment motion.'" *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990)). In other words, a plaintiff "must set forth by affidavit or other evidence specific facts, rather than general factual allegations of injury." *Id.* (cleaned up).

AAER has not satisfied the standard for associational standing with the requisite level of proof for at least two reasons. First, AAER has not identified a member that has standing to sue on its own behalf by either naming that member or seeking and obtaining permission from the district court for one of its members to proceed pseudonymously. Second, AAER has otherwise not shown that one of its members — whether properly identified or not — has suffered an injury-in-fact because the declarations provided by Members A and B suggest that they will not have to post any demographic information on their websites.

### 1. AAER has failed to identify a member with standing to challenge SB 2930.

A prerequisite of the first prong of associational standing is for the plaintiff organization to "'identify members who have suffered the requisite harm.'" *Prairie Rivers Network*, 2 F.4th at 1007 (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009)). Before the district court, AAER asserted that it had satisfied this requirement by providing declarations purporting to show that Members A and B had standing, but without naming either organization or seeking permission from the district court for the members to proceed using pseudonyms. This was insufficient to satisfy AAER's burden at the preliminary injunction stage, and the denial of its motion may be affirmed on this basis.

In *Summers*, the Supreme Court addressed whether several environmental groups had demonstrated associational standing at the summary judgment stage. 555 U.S. at 498-99. In determining that they had not, the Court rejected a "statistical probability" approach to associational standing, explaining that such an

approach "would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Id.* at 498. Indeed, the threshold requirement of "naming the affected members has never been dispensed with in light of statistical probabilities." *Id.* at 498-99.

Many circuits have appropriately understood *Summers* to impose a requirement that an organization seeking to proceed under an associational standing theory identify an injured member by name — at least by the post-pleading stages of the litigation. *See, e.g.*, *Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1204 (11th Cir. 2018) ("We did not relax the requirement that an organization name at least one member who can establish an actual or imminent injury."); *Tennessee Republican Party v. Sec. & Exch. Comm'n*, 863 F.3d 507, 520 (6th Cir. 2017) ("Such specificity requires that the plaintiff-organization name the individuals who were harmed unless *all* the members of the organization are affected by the challenged activity.") (emphasis in original) (cleaned up); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) ("The group submitted an affidavit asserting that many of its members asked it to take legal action challenging the regulation, but the Supreme Court has said that an affidavit provided by an association to establish standing is insufficient unless it names an injured individual."); *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1194-95 (9th Cir. 2013) ("AGC does not identify any affected members by name nor has it submitted declarations by any of its members

attesting to harm they have suffered or will suffer under Caltrans' program."). *But see, e.g.*, *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024).

For its part, this court has suggested that these out-of-circuit cases may be correct. *Prairie Rivers Network*, 2 F.4th at 1011. Nevertheless, whether *Summers* imposes a naming requirement remains an open question in this circuit. *E.g.*, *Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1069 (7th Cir. 2026); *Prairie Rivers Network,* 2 F.4th at 1011. Indeed, as this court has twice recognized, it has "case law preceding *Summers* remarking that to satisfy the first prong of associational standing, 'the member on whose behalf the suit is filed [can] remain unnamed by the organization.'" *Satanic Temple*, 163 F.4th at 1069 (quoting *Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008)); *see also Prairie Rivers Network,* 2 F.4th at 1011. But in both of those decisions, the court declined to decide whether that precedent survived *Summers* because there were additional, independent flaws in the organization's standing that obviated the need for the court to resolve this open question. *Satanic Temple, Inc.*, 163 F.4th at 1069.[2]

---

[2] There is also a separate open question as to whether the identification standard set forth in this court's *Disability Rights Wisconsin* decision, which involved a motion to dismiss, would apply to the post-pleading stages of litigation, which are subject to different standards of proof. *Speech First, Inc.*, 968 F.3d at 638; *see also Prairie Rivers Network*, 2 F.4th at 1009 (distinguishing "*Summers* and *Lujan*, as appeals from summary judgment, [as] involv[ing] different stages of litigation than this case"); *id.* at 1010 ("At the pleading stage, PRN need not establish associational standing at a level sufficient for summary judgment.").

Here, too, this court need not resolve that question because AAER did not seek permission from the district court for its members to proceed pseudonymously, as is required in this circuit. As this court has explained, notwithstanding any question about an organization's need to name an injured member that was left open after *Summers,* an organization seeking to proceed with unnamed members must "ask the district court to permit its alleged affected members to proceed without being identified by their name." *Satanic Temple, Inc.*, 163 F.4th at 1069 n.10. In other words, even under pre-*Summers* precedent, "while the person could remain unnamed, the organization still needed to identify them," which it could do "by identifying its members and seeking permission from the district court to have them proceed pseudonymously." *Id.* (collecting cases); *see also Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 504 (S.D.N.Y. 2022), *aff'd*, 96 F.4th 106 (2d Cir. 2024), *opinion vacated and superseded on reh'g*, 126 F.4th 109 (2d Cir. 2025), and *vacated and remanded on other grounds*, 126 F.4th 109 (2d Cir. 2025) (noting that plaintiff never requested to proceed anonymously, notwithstanding that "when a plaintiff brings a lawsuit in federal court, it bears the burden of establishing the Court's Article III power to adjudicate its case" and that there "are procedures for keeping information confidential in a litigation if legal standards are met").

AAER's position before the district court was that it could proceed with "anonymous declarations so long as the declarant is a readily identifiable person who can be subjected to the penalties for perjury." Doc. 78 at 4 (cleaned up). And because "Officers A and B can be identified by Blum and the Alliance's lawyers,

25

either to the Court *in camera* or to the Court and Illinois under a protective order," AAER viewed it as having satisfied all necessary requirements. *Id.*; *see also* Doc. 96 at 8-9. But as defendants have explained, and consistent with *Satanic Temple,* AAER's proposed course of naming the members *in camera* or under a protective order does not absolve AAER of making "the requisite showing that the extraordinary course of proceeding anonymously is appropriate here." Doc. 78-1 at 4; *see also, e.g.*, Doc. 69 at 5-6; Doc. 73 at 5.

Indeed, this court has "repeatedly voiced [its] disfavor of parties proceeding anonymously, as anonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Doe v. Vill. of Deerfield,* 819 F.3d 372, 376-77 (7th Cir. 2016). Accordingly, "[t]o proceed anonymously, a party must demonstrate exceptional circumstances that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id.* at 377 (cleaned up). These circumstances include "protecting the identities of children, rape victims, and other particularly vulnerable parties," *id.* (internal quotations omitted), as well as those who have articulated a compelling fear of retaliation or physical harm "beyond the reaction legitimately attached to the truth of events as determined in court." *Doe v. Trs. of Indiana Univ.,* 101 F.4th 485, 491 (7th Cir. 2024), *cert. denied sub nom. Doe v. The Trs. of Indiana Univ.*, 145 S. Ct. 546 (2024). By contrast, this court has "refused to allow plaintiffs to proceed anonymously merely to avoid embarrassment" or to "protect[ ] [their] reputation,"

26

especially when those consequences (such as being "shunned") are a natural consequence of their underlying conduct. *Id.*

For its part, the district court made no findings that AAER had made the requisite showing to proceed pseudonymously at the preliminary injunction stage. Instead, it addressed pseudonymity in the context of defendants' motion to dismiss, where it concluded that dismissal was not appropriate because of the lack of decisions applying the *Summers* naming requirement to the pleading stage and because of its view that "the existing body of case law successfully challenging the propriety of proceeding pseudonymously" involved instances where a party, as opposed to members of an organization, sought to remain unnamed. A9.[3] As noted, the latter conclusion is inconsistent with this court's precedent, which directs organizations to seek permission from the district court to proceed pseudonymously in the associational standing context. And, in fact, district courts are required to reach this question even if not specifically raised by the parties (which was not the case here) because of the court's "independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal court[ ]." *Doe 3 v. Elmbrook Sch. Dist.*, 658 F.3d 710, 721-22 (7th Cir. 2011), *adopted on this issue by Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 842-43 (7th Cir. 2012) (*en banc*).

---

[3] The court also addressed the content of the declarations insofar as it determined that the amended declarations cured the statutory deficiencies. A19. But it did not consider whether AAER had satisfied this court's standard for remaining unnamed in litigation. *Id.*

Regardless, AAER could not satisfy the standard for its members proceeding pseudonymously, even if it had properly presented this issue to the district court. At the threshold, AAER has not shown that any of its members are children, rape victims, or other particularly vulnerable parties who face a compelling fear of retaliation or physical harm, as is required under this court's precedent. *Trs. of Indiana Univ.*, 101 F.4th at 492 ("The district judge abused his discretion when permitting 'John Doe' to conceal his name without finding that he is a minor, is at risk of physical harm, or faces improper retaliation."). In fact, AAER has not even presented an *individual* member who seeks to protect his or her identity. Instead, AAER wishes to protect the names of corporate entities that do not wish to be "publicly connect[ed] to their unpopular viewpoints," A37, for fear that they may face decreased donations, fewer partnership opportunities with other organizations, and less interest from potential employees, A67, A72. But such motivations have never been sufficient under this court's precedent to justify the extraordinary step of proceeding anonymously. *E.g.*, *Trs. of Indiana Univ.*, 101 F.4th at 492 (rejecting "risk of stigmatization from the community and the public at large" as legitimate reason) (cleaned up). And though Members A and B claim a fear of retaliation from the State if their identities were to become public, *e.g.*, A67, that position is belied by AAER's offer to provide these same identities to defendants (*i.e.*, the State) in lieu of identifying themselves on the public docket, Doc. 78 at 4.

In short, AAER has not satisfied the requirements for associational standing because it failed either to name a member or to obtain permission from the district

court for one of its members to proceed pseudonymously. Instead, it attempts to shield its members from the duty that every other litigant faces when filing suit in federal court. Had Members A and B sought to proceed directly in litigation, without the cover of AAER and associational standing, there is no question that these organizations would have had to name themselves. This court should reject AAER's attempts to turn the doctrine of associational standing into an end run around the disclosure requirement that every other litigant subjects itself to when availing itself of the federal courts.

### 2. AAER has failed to establish an injury-in-fact.

Even if AAER had satisfied the identification requirement, it still lacked standing because it did not show a sufficient injury-in-fact, "the first and foremost of standing's three elements." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (cleaned up). To establish injury-in-fact, a plaintiff must show that he or she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotations omitted). As this court has explained, a "'particularized' injury is one that affects the plaintiff in a personal and individual way." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1152 (7th Cir. 2020) (cleaned up). And "[t]o qualify as 'concrete,' an injury must be real, not abstract"; "that is, it must actually exist." *Id.* (cleaned up). Imposing these requirements ensures that "that federal courts exercise their proper function in a limited and separated government." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir.

2024) (internal quotations omitted).

Although AAER's filings before the district court and this court discuss two aspects of SB 2930 that its members purportedly find objectionable — the collection of information from their officers and directors and the disclosure of any collected information, *e.g.*, AAER Br. 36-37 — AAER's claims can only fairly be seen to encompass the disclosure requirement. That is because with respect to the collection requirement, AAER conceded before the district court (including in its original, verified complaint and at the preliminary injunction stage) that it would be constitutionally permissible for a State to require AAER to collect demographic information and submit it to the State. *See* Doc. 1 at 15 ("Illinois . . . could require charitable organizations to report their demographics to the State"); Doc. 95 at 72:15-17 (similar). The problem with SB 2930, AAER contended, was that it required entities to post that information on their websites. Doc. 1 at 14. In light of this position taken in the verified complaint — which AAER recognizes "counts as a declaration," AAER Br. 25 — AAER cannot fairly claim an injury based on the collection component of SB 9320. Furthermore, as explained below, *infra* Section II.B, AAER's concession is correct because the requirement to collect optional demographic information is not an invasion of a legally protected interest.

And as to SB 2930's disclosure requirement, AAER has failed to establish an injury-in-fact because it has not shown that it will suffer a concrete or particularized injury, as the district court rightly held. *See* A11-A15. On the contrary, the declarations submitted by AAER in support of its preliminary

30

injunction confirm "that Members A and B face no real prospect or substantial risk of disclosure, and thus no cognizable injury based on disclosure at all, because their officers and directors do not intend to disclose any demographic information about themselves." A13.

Indeed, no declaration submitted in support of AAER's standing states, or even suggests, that the officers and directors of Member A or Member B will choose to disclose their demographic data. *See* A64-A73. Rather, the declarants attest that they and their organizations — including their boards and staff — "do not want to be forced to promote these messages," A66, A71; including ones that "will make users think that [the organization] endorses controversial concepts like race-based employment practices and proportional representation," A66, or "gender identity," A71; *see also, e.g.*, A70 ("Member B, and many if not all of its officers and directors, do not believe in 'gender identity' and object to suggesting that someone can identify as a gender that's different from their biological sex."). Because Members A and B have not provided any basis to conclude that their officers and directors would provide their demographic information, there is no reason to believe that Members A and B will face any imminent or concrete harm from SB 2930.

AAER raises several arguments in response, but none is persuasive. To start, AAER asserts that has standing because "[b]eing 'required' to do 'some action' is an injury." AAER Br. 21 (quoting *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 382 (2024)). But *Alliance for Hippocratic Medicine* does not support AAER here because the Supreme Court made that statement in the context of explaining that

31

when the government promulgates "regulations that require or forbid some action by the plaintiff[,] . . . standing is usually easy to establish." 602 U.S. at 382. But, the Court added, when "a plaintiff challenges the government's unlawful regulation (or lack of regulation) of *someone else*, standing is not precluded, but is ordinarily substantially more difficult to establish." *Id.* (emphasis in original) (cleaned up). And here, as explained, AAER cannot satisfy that standard because it has not shown that its members will be required to do anything.

Next AAER, asserts that "[t]he compelled disclosure of information is an injury." AAER Br. 21. According to AAER, the district court's conclusion that SB 2930 would not require Member A or B to disclose any information was based on a misunderstanding of the law, under which, in AAER's view, "a nonprofit whose leaders all refuse to disclose any demographic still has a duty to post information on its website." *Id.* at 29. But that is not what the plain text of SB 2930 provides and, contrary to AAER's suggestion, *see id.* at 33, the district court was not required to "credit" this atextual view of the statute. As explained, the disclosure of demographic information by directors and officers is not mandatory; rather, any director or officer may "decline to disclose any or all personal demographic information to the corporation." 805 ILCS 105/114.15(c). And the law only requires that organizations post "the aggregated demographic information" that it collected. *Id.* § 105/114.15(a). In other words, if no data was collected, then no disclosure is required. *Id.*

There is likewise no requirement that an organization certify compliance

32

with SB 2930 or otherwise provide information about the participation rate of its officers and directors. 805 ILCS 105/114.15. *Contra* AAER Br. 30. In fact, when the sponsor of SB 2930 was asked if the website disclosure had to include those individuals who declined, the sponsor explained that it did not; rather, it was only the aggregate data for those who participated. Ill. Sen. Trans. 2024 Reg. Sess. No. 96 (Apr. 10, 2024) (remarks of Senator Johnson). Even when one legislator asserted her view that the disclosure requirement would extend to non-disclosures (which is the portion of the exchange cited by AAER, *see* AAER Br. 30), the sponsor rejected that characterization and reiterated that participation by officers and directors was "option[al], and individuals can decline." Ill. Sen. Trans. 2024 Reg. Sess. No. 96 (Apr. 10, 2024) (remarks of Senator Johnson).

Nor is AAER correct that even if the district court's reading were accurate, it would still have established standing because there is a "substantial risk that at least one officer or director would reveal at least one demographic to [Member] A or B." AAER Br. 24. At the threshold, AAER cites no statement from Member A or B to support that view and, as explained, their officers' declarations state otherwise. *Id.* And though AAER now claims that "'most' of [Member A and B's] leaders would divulge at least some personal information to the nonprofit," AAER cites the amended complaint (which was verified by AAER, not Members A and B), rather than the declarations. *Id.* at 25 (quoting A36). In any event, that passage in the complaint does not discuss the particular circumstances of Members A and B; rather, AAER asserts its view that, as a general matter, "[m]ost officers and

directors will answer because their nonprofit is asking and they are good team players." A36; *see also* AAER Br. 24 (similar); *id.* at 27 ("plaintiffs can ground their standing in general observations about human behavior and organizational incentives").

To be sure, as AAER points out, there are directors and officers of other organizations who have disclosed demographic information, and that information has been posted in compliance with SB 2930. AAER Br. 16. But it is also true, as AAER acknowledges, that some directors and officers have not disclosed demographic information. *Id.* And AAER has not shown that the directors and officers of the organizations upon which it relies for associational standing will fall into the former category — a fact that it presumably could have learned before filing this litigation by simply asking those officers and directors. Without this information, as the district court rightly concluded, it cannot be certain that Members A and B are likely to be harmed by SB 2930. *See* A12-A15. Instead, AAER has presented an "abstract dispute about the law" that does not satisfy Article III. *Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013) (cleaned up); *see also TransUnion v. Ramirez*, 594 U.S. 413, 423-24 (2021) (federal courts do not "adjudicate hypothetical or abstract disputes" or "exercise general legal oversight").

Finally, AAER cursorily claims that Members A and B have demonstrated an injury-in-fact sufficient for standing purposes based on "the time and money spent on compliance — collecting the demographic responses, reviewing and aggregating

34

them, posting on the website, and maintaining the website for at least three years," AAER Br. 21 — and because "[d]eprivations of constitutional rights, like free speech and equal protection, are concrete injuries," *id.* at 22. But as noted, AAER has acknowledged that the State may, consistent with the Constitution, require its members to spend time collecting information, as well as reviewing and aggregating it. And with respect to disclosures, as explained, there is no reason to believe that Members A and B will spend any time posting information related to SB 2930 on their website or maintaining that information. And even if there were, neither Member A nor Member B has provided anything beyond a cursory statement that they will "incur direct expenses," A67, which is insufficient at this stage of the litigation to satisfy the injury-in-fact requirement. Relatedly, the mere inclusion of a constitutional claim does not automatically confer Article III standing, as AAER suggests. *E.g.*, *Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 614 (7th Cir. 2020) ("articulating a legal theory with clarity is not the same as advancing an allegation of imminent harm with the particularity — the individualization — demanded by Article III").

In sum, AAER has failed to show that any of its members would suffer a cognizable injury-in-fact due to SB 2930, which provides another independent ground for affirmance.

### B. AAER is unlikely to succeed on the merits of its First Amendment claim.

Even if AAER had established standing, it has failed to show that it is likely to succeed on its claim that SB 2930 improperly compels speech under the First

Amendment, and thus the district court's denial of the preliminary injunction motion should be affirmed on this ground as well.

Relevant here, disclosure requirements have long been considered permissible under the First Amendment. Indeed, while "unjustified or unduly burdensome disclosure requirements might offend the First Amendment . . . [a plaintiff's] rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985). This is true of disclosure requirements even as to types of speech that are typically "'subject to strict scrutiny.'" *Citizens United v. FEC,* 558 U.S. 310, 340, 366-67 (2010) (quoting *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2007)). Because "disclaimer and disclosure requirements" "do not prevent anyone from speaking," the government must show only "a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Id.* at 366-67 (quoting *Buckley v. Valeo,* 424 U.S. 1, 66 (1976)).

SB 2930 satisfies this standard. At the threshold, SB 2930's collection component complies with the First Amendment because a requirement that organizations collect data is not compelled speech; rather, it is a regular occurrence for most regulated entities. In fact, the Supreme Court has recognized that a State may "require charities to file financial disclosure reports," which necessarily includes collecting the information on those forms. *Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 788 (1988). Indeed, as AAER

36

conceded below, it would be constitutional for Illinois to require it to collect demographic information and submit it to the State. *E.g.*, Doc. 44 at 10 (state "could require nonprofits to privately report their demographic statistics to the government"); Doc. 95 at 72:15-17 (AAER concession that "just the collection [of demographic information] would not be an issue").

Similarly, the disclosure component of SB 2930 is a constitutionally permissible regulation because it furthers the State's substantial and established interest in "promoting transparency and accountability," *John Doe No. 1 v. Reed*, 561 U.S. 186, 198 (2010), and does so in a flexible, narrow manner by allowing individuals to opt out. In fact, this court has recognized a legitimate "state interest in disclosure," *Pilsen Neighbors Cmty. Council v. Netsch*, 960 F.2d 676, 686 (7th Cir. 1992), as well as one in "transparency," *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 498-99 (7th Cir. 2012). SB 2930 implicates both interests, since its disclosure requirement allows for greater transparency with respect to the demographic composition of nonprofit organization leadership. *See* 805 ILCS 105/114.15(a), (c).

Furthermore, SB 2930 does not actually compel any individual to disclose any information about themselves; as discussed, Section II.A.2, it includes an explicit opt-out option, allowing any individual to decline to answer. In addition, for those who do not opt out, SB 2930 does not require that covered organizations disclose the information in any particular location, form, or manner on their websites. Instead, SB 2930 provides that the organization "shall post on its publicly available website"

the aggregated information. 805 ILCS 105/114.15(a). Covered organizations maintain full discretion to place this information, and any context they wish to provide, in a manner that comports with their mission and messaging. *C.f. Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641 (7th Cir. 2006) (criticizing compelled labeling that gave regulated entities no flexibility in presenting the required information).

As other circuits have recognized, the presence of similar limitations and guardrails mitigates the impact of regulations on First Amendment rights. *E.g., Rio Grande Found. v. Oliver*, 154 F. 4th 1213, 1228 (10th Cir. 2025) (law satisfies exacting scrutiny because "[b]y erecting guardrails and an opt-out, the [law] is narrowed to only capture larger expenditures that are express advocacy or made at a particular time and to a certain audience that make them the functional equivalent"); *Gaspee Project v. Mederos*, 13 F.4th 79, 83, 90 (1st Cir. 2021) (upholding a "limited disclosure" law which included a requirement "that covered organizations must include their own names and list their five largest donors from the previous year on the electioneering communication itself" because it only covered certain donors and contained an opt-out option); *see also Maryland Shall Issue, Inc. v. Anne Arundel Cnty. Maryland*, 91 F.4th 238, 247, 252 (4th Cir.), *cert. denied*, 145 S. Ct. 152 (2024) (upholding requirement for gun sellers to provide health and safety pamphlets during purchases because of the limitations on what the pamphlets say).

AAER contends, however, that *Zauderer*'s test should not apply because SB 2930 "regulates charitable speech, not commercial advertising." AAER Br. 33. But this is incorrect. To be sure, the Supreme Court has recognized that when charitable organizations engage in commercial speech, the analysis is more complicated because any governmental regulation "must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). As a result, many regulations of charitable speech are considered "content-based regulation of speech" outside of the realm of commercial speech. *Riley,* 487 U.S. at 795; *see also id.* at 800 (recognizing that some disclosure laws are not subject to the heightened scrutiny associated with charitable speech).

But as this court has recognized, these decisions should not be interpreted as transforming all regulation of charitable speech into content-based regulation; rather, the character of the regulation itself matters. *See National Coalition of Prayer, Inc. v. Carter*, 455 F.3d 783, 789 (7th Cir. 2006) (disagreeing with concurrence that another First Amendment doctrine announced "has been displaced by subsequent Supreme Court authority creating frameworks for evaluating commercial and charitable speech"). And in the Supreme Court cases cited by AAER, the laws at issue bore restrictive characteristics that are not present here,

where the State has enacted a voluntary disclosure law that does not limit certain types of speech or solicitation activities.  For instance, in *Schaumburg*, the village imposed a regulatory framework restricting the proportion of solicited funds that could be used for salaries and administrative expenses.  444 U.S. at 624.  And in *Riley*, the State directly regulated how professional fundraisers could operate.  487 U.S. at 790-91.  The *Zauderer* standard, by contrast, is better suited to evaluate the constitutionality of SB 2930 since, as explained, it applies to disclosure regulations.

AAER resists this conclusion, asserting that because SB 2930 regulates charities, the standard set forth in *Zauderer* and subsequent cases cannot apply.  AAER Br. 38.  But this is incorrect.  *Riley*, which was decided after *Zauderer*, acknowledges that some charitable disclosure laws are permissible and evaluated under a less strict standard of scrutiny.  *See* 487 U.S. at 800-01.  And circuit courts, including this court, have applied *Riley* outside of the commercial speech context by evaluating disclosure laws against a standard akin to the one announced in *Zauderer*.  For instance, this court has explained that, even in the charitable solicitation context, certain "disclosure requirements need only be reasonably related to a legitimate state goal, not narrowly tailored to meet a compelling state interest."  *Pilsen Neighbors Cmty. Council*, 960 F.2d at 686.  And though *Pilsen* cited *Riley* for this proposition, *id.*, the standard it articulated is materially similar to the one announced in *Zauderer*.  Other courts around the country have done the same.  *See, e.g.*, *Citizens United v. Schneiderman*, 882 F.3d 374, 382 (2d Cir. 2018) (even in the charitable solicitation context, "[d]isclosure requirements are not

40

inherently content-based . . . [and] are not only reviewed using a lower degree of scrutiny, they are routinely upheld"); *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1248 (10th Cir. 2000) (citing *Riley* to hold that fundraising disclosure requirements need only "promote [the State's] legitimate interest . . . while not unnecessarily interfering with solicitors' protected speech"). Thus, the *Zauderer* standard remains applicable regardless of whether charities are being regulated.

AAER next asserts that *Zauderer* does not apply because the required disclosures "are not 'purely factual and uncontroversial.'" AAER Br. 39 (quoting *NIFLA v. Becerra*, 585 U.S. 755, 768 (2018)). Specifically, AAER claims that "SB2930 makes [Members A and B] either promote the controversial worldview that the demographic balance of a nonprofit's leadership is somehow relevant, or alter their speech by adding disclaimers denying that message." *Id.* But AAER fails to explain how reporting aggregate demographic information is actually controversial. Indeed, the United States government — a party supporting AAER in this case — reports demographic balances for every individual in the country via the census and has done so for over two centuries. *See* U.S. Census Bureau, Measuring Race and Ethnicity Across the Decades: 1790-2010 (Nov. 2, 2015).

Furthermore, the disclosures required by SB 2930 are factual: under SB 2930, an organization's sole obligation is to report the answers to questions that its directors and officers have provided. It does not require the organization to take a position on those answers, educate about those answers, or use the vocabulary in its persuasive speech. By contrast, in *NIFLA*, which AAER cites, the law at issue

41

required the regulated clinics "to disclose information about *state*-sponsored services" that included, among other things "abortion," which the Court described as "anything but an 'uncontroversial' topic." 585 U.S. at 769 (emphasis in original).

AAER also claims that SB 2930's disclosure categories themselves are controversial. AAER Br. 40. As to the racial categories, AAER claims that the Supreme Court has held such categories are "incoherent" and "irrational*." Id.* But its sole citation is to a concurrence, *see Students for Fair Admissions, Inc. v. Harvard*, 600 U.S. 181, 292-93 (2023) (Gorsuch, J., concurring), and the Supreme Court has used similar racial categories and demographic breakdowns in voting rights cases, with no mention of controversy, *see League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) (using term "Latino" throughout); *Bush v. Vera*, 517 U.S. 952 (1996) (using term "African-American" and "Hispanic" throughout). Similarly, AAER claims that the existence of "gender identity" and "sexual orientation" is in itself controversial. AAER Br. 40. But again, AAER relies on cases that have little to do with the present matter, citing an out-of-circuit case about requiring a teacher to use students' preferred pronouns, *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021); the Supreme Court's decision legalizing same-sex marriage, *Obergefell v. Hodges*, 576 U.S. 644 (2015); an out-of-circuit case involving whether diversity and recruiting targets were authorized by statute, *All. for Fair Bd. Recruitment v. Sec. & Exch. Comm'n*, 125 F.4th 159 (5th Cir. 2024); and a Supreme Court case tangentially mentioning disagreements about whether to teach about sexual orientation and gender identity, *Janus v. Am. Fed'n of State,*

42

*Cnty., & Mun. Emps., Council 31*, 585 U.S. 878 (2018).  And, perhaps more to the point, AAER's argument overlooks the fact that the demographic information at issue here is voluntarily self-reported.  Nothing about SB 2930 requires individuals to identify themselves using a label they view as "incoherent."

All told, notwithstanding AAER's arguments to the contrary, SB 2930 is a constitutionally permissible disclosure regulation that does not impede upon its members' First Amendment rights.

### C. Plaintiffs are not likely to succeed on the merits of their Equal Protection Clause claims.

Finally, plaintiffs have not shown a likelihood of success on their equal protection claims.[4]  The Equal Protection Clause prohibits governments from racially discriminating by providing that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  Government decision-making based on an individual's race — whether preferential or prejudicial — implicates the Equal Protection Clause.  *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 505-06 (1989).  But SB 2930 is facially race-neutral, and AAER has not argued otherwise.  *E.g.*, AAER Br. 41-45.  To invalidate a facially race-neutral policy, AAER must show that it was adopted with an "invidious discriminatory purpose."  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *see also Alston v. City of Madison*, 853 F.3d 901, 907-08 (7th

---

[4] On appeal, the United States does not present any specific argument that would support entry of a preliminary injunction on the merits of this claim.  *See* U.S. Br. 14-18.  Instead, it says only that it "join[s] forces to seek the same relief" as AAER.  *Id*. at 43.  Accordingly, this brief addresses the arguments as framed by AAER.

Cir. 2017) (proof of discriminatory effect is insufficient to show an equal protection violation absent evidence of discriminatory intent).  AAER has not satisfied this burden.

AAER attempts to establish discriminatory purpose by pointing to statements by a handful of lawmakers stating that they hoped SB 2930 would "support[ ] diversity."  AAER Br. 44.  But such a desire is insufficient to meet this burden; "rather, discriminatory purpose requires a defendant to have selected a particular course of action at least in part because of . . . its adverse effects upon an identifiable group."  *Alston*, 853 F.3d at 907 (cleaned up).  And AAER does not explain how a lawmaker's generic desire to support diversity is linked to a desire to inflict adverse effects upon an identifiable racial group.  In fact, AAER cannot even offer a specific link between the complained-of statements and race.  Nor could it, since SB 2930 measures demographic information on a wide variety of categories, including veteran status and disability status.  805 ILCS 105/114.1(a).

In an attempt to sidestep this burden, AAER has crafted a theory of "indirect" discrimination through private inducement to claim that SB 2930 encourages private persons to discriminate based on race.  AAER Br. 42-44.  In other words, under this theory, nonprofit organizations like Members A and B would be the perpetrators of the complained-of hypothetical racial discrimination, rather than the victims.  This theory finds no support in the case law.

For instance, AAER leads its argument with a citation to *Norwood v. Harrison*, 413 U.S. 455 (1973), a case involving very different legal and factual

circumstances.  AAER Br. 42.  In *Norwood*, the Supreme Court discussed its "consistent[ ] affirm[ance of] decisions enjoining state tuition grants to students attending racially discriminatory private schools."  413 U.S. at 463.  The reason for this conclusion, the Court explained, is because it is unlawful for the State to provide tangible, financial aid to schools that engage in racial discrimination, whether those schools be state-operated or private institutions.  *Id.* at 464-65.  In other words, if "[r]acial discrimination in state-operated schools is barred by the Constitution," then under the same principles, the State cannot "induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish" in its own schools.  *Id.* at 465 (internal quotations omitted); *see also City of Richmond*, 488 U.S. at 503 (State has a responsibility to prevent tax dollars from financing racial exclusion in private industry).  Here, however, no state funds are being used at all, let alone to support a racially discriminatory institution.

AAER next cites to cases involving Jim Crow laws, quotas or recruitment targets, and other inapposite situations.  AAER Br. 42-43.  For instance, AAER relies on *Anderson v. Martin*, 375 U.S. 399 (1964), to claim that SB 2930 "furnishes a vehicle" for race-based discrimination.  AAER Br. 43-44.  But *Anderson* concerned a requirement that candidates' races be printed on ballots in Jim Crow Louisiana — and, as AAER concedes, "Illinois is not Jim Crow Louisiana."  *Id.* at 43.  The Court in *Anderson* explained that the law was discriminatory because, by "directing the citizen's attention to the single consideration of race or color, the State indicates that a candidate's race or color is an important — perhaps paramount —

consideration in the citizen's choice." 375 U.S. at 402. Unlike in *Anderson*, SB 2930 requires only aggregate information, displayed in a place of the nonprofit's choosing and with whatever context the nonprofit wishes to provide, with the ability to opt out. And while Louisiana had no reason for placing race on the ballot other than to enable discrimination at a time of pervasive state-led discrimination, SB 2930 was passed to improve transparency for Illinois residents making donations to charitable organizations operating in Illinois.

Plaintiffs also repeatedly cite to *MD/DC/DE Broadcasters Association v. FCC*, 236 F.3d 13 (D.C. Cir. 2001). In that case, the FCC required radio stations to either utilize approved recruitment processes, or alternatively, to report demographics of recruited persons with the threat of "investigat[ion] [of] the broadcaster's recruitment efforts" if the numbers of "women and minorities" they recruited were not sufficient. *Id.* at 19. This is entirely different from SB 2930. SB 2930 does not set any goals for the covered nonprofits and does not investigate nonprofits based on the disclosed information. Nor does SB 2930 suggest that these organizations should treat members of particular races differently or target certain demographics for recruitment. As noted, it is completely race-neutral.

Finally, even if there were a theory of private inducement that could apply here (which there is not), AAER's theory is far too attenuated to satisfy it. As explained, AAER believes that if an organization's officers and directors elect to provide demographic information and the organization posts the aggregate data on its website, then the public will react negatively to the aggregate responses and

46

decide not to donate to that organization, which, in turn, may cause the organization to respond to that pressure by selecting a more diverse leadership team through discriminatory measures. A39-A40. But this chain of events is speculative and, importantly, impermissibly relies on the decisions of independent actors like individual donors and the organizations themselves.

All told, plaintiffs have not shown that preliminary injunctive relief was warranted on their equal protection claim because SB 2930 is a facially neutral law that does not have a discriminatory purpose.

### III. Plaintiffs Have Not Satisfied The Remaining Preliminary Injunction Factors.

Even if plaintiffs had shown a likelihood of success on the merits, a preliminary injunction would not be warranted because the remaining preliminary injunction factors weigh against them. Specifically, plaintiffs have not shown that they will suffer irreparable harm, and, in any event, any minimal harm would be outweighed by the public interest in transparency and disclosure. As with the Equal Protection Clause claim, the United States does not make any arguments related to the remaining preliminary injunction factors. *See* U.S. Br. 14-18.

AAER asserts three purported irreparable harms: the deprivation of constitutional rights, the unwarranted disclosure of confidential information, and nonrecoverable compliance costs. AAER Br. 46-48. But as explained, *see supra* Sections II.B-C, AAER is not likely to succeed on its constitutional claims, and for those same reasons cannot show that its members are being irreparably harmed by SB 2930 in that respect. Similarly, as discussed, *see supra* Section II.A., AAER has

47

not shown that its members will actually disclose any information to the public, let alone any confidential information. On the contrary, it is entirely within the control of each officer and director whether he or she decides to share that information. And if that information is disclosed, it will be disclosed in the aggregate and without any connection to that individual. Finally, monetary harm is typically not recognized as irreparable because it can be "fully rectified in a final judgment." *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1024 (7th Cir. 2017).

On the other hand, as explained, *supra* p. 37, the State and its residents have a substantial interest in transparency and disclosure that would be hindered by the imposition of a preliminary injunction, especially one that extends beyond Members A and B. And though AAER has (correctly) narrowed the scope of its requested relief from a universal injunction, *e.g.*, Doc. 79 at 14, to one that covers only AAER's members, AAER Br. 51, it has not shown why such relief would be appropriate or necessary here. On the contrary, it has not even represented that all of its members would be subject to SB 2930, let alone that they would be harmed by its requirements. And in fact, notwithstanding plaintiffs' claims of immediate, irreparable harm to all Illinois entities regulated by SB 2930 before the district court, AAER and the United States agreed to stand down on seeking an injunction pending appeal from this court so long as defendants agreed not to enforce SB 2930 only against Members A and B. A76. All told, the balance of the equities weighs in favor of defendants, and not plaintiffs. But if an injunction were entered, it should be limited to remedy any harm established by plaintiffs.

## IV. Exercising Pendent Appellate Jurisdiction Over The Partial Dismissal Order Is Unwarranted.

As explained, *supra* pp. 2-5, the only portion of the district court's order over which this court has appellate jurisdiction is the denial of plaintiffs' preliminary injunction motions. Nevertheless, plaintiffs seek fulsome review of that decision by asking this court to exercise pendent appellate jurisdiction over the portions of the district court's decision dismissing their claims, AAER Br. 3; U.S. Br. 3, which, in any event, were entered without prejudice and with leave to amend, A20. For the reasons outlined, *supra* pp. 2-5, the exercise of pendent appellate jurisdiction is not warranted here because this court may affirm the denial of plaintiffs' preliminary injunction motions on any number of alternative grounds that do not relate to the reasoning provided by the district court for its dismissal of plaintiffs' claims. But if this court were to exercise pendent appellate jurisdiction, then it should uphold the dismissal of AAER's claims under Fed. R. Civ. P. 12(b)(1) for the same reasons discussed, *supra* Section II.A.

## CONCLUSION

For these reasons, Defendants-Appellees request that this court affirm the district court's denial of preliminary injunctive relief.

Dated March 23, 2026                          Respectfully submitted,

<div style="margin-left: 3em">

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3312

Attorneys for Defendants-Appellees

</div>

/s/ Sarah A. Hunger
**SARAH A. HUNGER**
Deputy Solicitor General
**AKANKSHA SHAH**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word, in 12-point Century Schoolbook font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(A) in that the brief is 12,335 words.

/s/ Sarah A. Hunger
**SARAH A. HUNGER**
Deputy Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on March 23, 2026, I electronically filed the foregoing Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<div style="text-align: right">

/s/Sarah A. Hunger
**SARAH A. HUNGER**
Deputy Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

</div>